IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| M. DIANE KOKEN | : | MISCELLANEOUS ACTION |
| | : | |
| v. | : | |
| | : | NO. 06-mc-81 |
| LDG RE CORPORATION, et al. | : | |

**MEMORANDUM**

**I. Introduction**

M. Diane Koken, the statutory liquidator of Legion Insurance Company (in liquidation) ("Legion") and the Villanova Insurance Company (in liquidation) ("Villanova"), a related company (collectively, "Petitioner" or "Legion"), seeks to confirm and have judgment entered on an arbitration award issued on December 15, 2005 against the LDG Reinsurance Corporation ("LDG Re" or "Respondent").

**II. Factual and Procedural Background**

Petitioner and Respondent entered into two Quota Share Reinsurance agreements, effective April 1, 1999 and April 1, 2000 ("Reinsurance Agreements"), under which LDG Re agreed to reinsure Petitioner for any liabilities it retained from certain workers' compensation and employers' liability policies. LDG Re then booked the reinsurance into a pool facility called the Workers' Compensation Alternative Facility ("WCAF-1"), in which a number of member companies participated, including the Chartwell Reinsurance Company ("Chartwell"). Chartwell subsequently merged into Trenwick America Reinsurance Corporation ("Trenwick").

When LDG failed to make timely payments due under the Reinsurance Agreements with

-1-

the Petitioner, the dispute went to an arbitration panel and, on April 12, 2005, the parties entered into a Settlement and Release Agreement ("Settlement Agreement") that, according to Petitioner, required LDG Re and the WCAF-1 member companies to make payments to Petitioner totaling $12,378,293.19 and to make future payments as they became due under the Reinsurance Agreements.  Petitioner alleges that Respondents failed to make $6,074,371.61 in payments of the $12,378,293.19 due under the Settlement Agreement as well as $1,004,103.72 in post-Settlement Agreement payments.  As a result, Legion sent a letter to the arbitration panel on September 22, 2005 seeking to reactivate the arbitration as provided for in paragraph 8.11 of the Settlement Agreement.  Respondent opposed this request for reactivation by letter dated October 5, 2005, claiming that LDG Re had not made the required payments because certain member companies in the WCAF-1 were entitled to set off other debts owed to them by Legion, an issue it claims was not subject to arbitration under paragraphs 5.4 and 8.4 of the Settlement Agreement.

> Paragraph 5.4 of the Settlement Agreement states that:
>
> The Parties are aware that certain WCAF-1 Member Companies may seek to assert a claim for a right of offset for the obligations that flow from the Reinsurance Agreements and payments of the Company Settlement Amount hereunder. Acknowledgment of the probability that a WCAF-1 Member Company may seek to assert such a claim does not in and of itself create, review or modify in any way any such rights.  [Legion] reserves the right to raise any and all defenses it may have in law or equity, should any such claim arise.
>
> Paragraph 8.4 of the same agreement provides that any disputes that arise between the

parties regarding the Settlement Agreement "including, but not limited to, the adjudication of issues arising from Paragraph 5.4" are to be referred to the "exclusive jurisdiction of the Commonwealth Court of Pennsylvania pursuant to the Pennsylvania Liquidation statute, 40 P.S.

§ 221.4."

Despite this opposition from LDG Re, the arbitration panel stated in an October 31, 2005 email to the parties that Petitioner could reactivate the Settlement Agreement, and, on December 15, 2005, the Panel issued a Final Award requiring LDG Re and the WCAF-1 member companies to pay the remaining amount due under the Settlement Agreement, totaling $5,032,534.53.  Neither the Panel's October 31, 2005 email nor the December 15, 2005 Final Award referred to the issue of setoffs raised by LDG Re in its October 5 letter.  Respondent has subsequently paid all but $1,867,527.36 of the amount ordered under the Final Award.  This remaining amount is attributable solely to Chartwell, now Trenwick, which paid $404,044.31 to Legion via wire transfer after the Final Award was issued but has not paid the remainder, claiming it is entitled to an offset from debts owed to it by Legion.

On April 28, 2006, Petitioner brought a Petition in this Court for an Order to Confirm and Enter Judgment on an Arbitration Award ("Petition") and to require Respondent to pay the $1,867,527.36 plus interest due to Legion under the Final Award.

On June 8, 2006, Petitioner filed a Motion to Strike an affidavit filed by Respondent's counsel in opposition to the Petition.

On July 10, 2006, Trenwick, as the successor-in-interest to Chartwell, and the Insurance Corporation of New York ("INSCORP"), a wholly owned subsidiary of Trenwick (collectively, the "Intervenors" or "Trenwick"), filed a Motion to Intervene in this action as of right pursuant to Federal Rule of Civil Procedure 24(a)(2) or, alternatively, permissively pursuant to Rule 24(b)(2) and (ii).  At the same time, Trenwick brought a Motion to Stay this action pending a decision on its petition to intervene, filed concurrently with the present Motion to Intervene, in the Legion

liquidation proceedings currently taking place in Commonwealth Court of Pennsylvania. Following oral argument on December 8, 2006, this Court granted the Motion to Intervene but denied the Motion to Stay by Order dated December 13.

### III. Jurisdiction and Venue

The Court has jurisdiction pursuant 28 U.S.C § 1332 because the suit is between citizens of different states and the matter in controversy exceeds $75,000.  Venue is proper in this district pursuant to the Federal Arbitration Act, 9 U.S.C. § 9, because the Settlement Agreement between the parties specifies Philadelphia as the place of arbitration.

### IV. Discussion

#### A. Petition for Order to Confirm and Enter Judgment on an Arbitration Award

According to Petitioner, since Respondent failed to file a motion to vacate, strike or correct the award under Sections 10 and 11 of the FAA within the required time period, the Court has no grounds upon which to refuse to confirm the award.  Petitioner further contends that, even if the Respondent had make such a motion in a timely manner, because the court's review of arbitration awards is "exceedingly narrow" and the award itself meets all the threshold requirements for enforcement, there is no basis for the Court to refuse to confirm the arbitration award.

Respondent raises two affirmative defenses in its response to the Petition.  First, LDG Re argues that it is not liable for the remaining sum because, as the manager of the WCAF-1 facility, it is responsible only for collecting money from the WCAF-1 member companies and is not liable to Legion to pay any amounts under the Settlement Agreement in its own right.  Instead, LDG Re contends that Legion should have brought this Petition against Chartwell, the member

company who has failed to make all of its payments to Legion.  Second, Respondent argues that it did not receive proper notice of the proceedings because, when it was served with the Petition, that Petition did not include a summons or information on when the Petition was filed and the amount of time LDG Re would have to respond.

Petitioner replies that Respondent's response should be stricken because it was filed approximately ten days after the fourteen day deadline for responding to a motion had passed under Rule 7.1(c) of the Local Rules of Civil Procedure.  According to Petitioner, there was no need for a summons or any sort of specific notice regarding the time period for a response because the procedures governing motions, and not pleadings, apply to this action.  Under Section 6 of the FAA, any application to the court under the FAA "shall be made and heard in the manner provided by law for the making and hearing of motions."  9 U.S.C. § 6.

Section 9 of the FAA provides that, if the parties to an arbitration have agreed that a court judgment will be entered on any award made in the arbitration, that any party subject to the agreement may apply to the court for an order confirming the award within a year after the award is made.  That court "must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title."  9 U.S.C § 9.  Sections 10 and 11 of the FAA describe the grounds upon which a court can vacate, modify or correct an arbitration award, and Section 12 of the FAA provides that notice of such a motion must be served on the opposing party within three months of the time after the award was filed or delivered.  Once the three month time period has expired, a party may not raise a motion to vacate, modify, or correct an arbitration award, even if it is in opposition to a later motion to confirm.  See Taylor v. Nelson, 788 F.2d 220, 225 (4th Cir. 1986); Florasynth, Inc. v. Pickholz, 750 F.2d 171, 174-75

(2d Cir. 1984); Corey v. N.Y. Stock Exch., 691 F.2d 1205, 1212 (6th Cir. 1982); U.S. Cocoa Corp. v. Cacao Barry Merchs. Distrib., No. 82-2877, 1987 WL 7672, at *2 (D.N.J. 1987).  Where a party to an arbitration makes such an application to the court within the requisite time period, the court's review of that award is "severely limited."  See Mutual Fire, Marine & Inland Ins. Co. v. Norad Reinsurance Co., 868 F.2d 52, 56 (3d Cir. 1989); see also Swift Indus. v. Botany Indus., 466 F.2d 1125, 1130 (3d Cir. 1972); Jeffrey M. Brown Assocs. v. Allstar Drywayll & Acoustics, Inc., 195 F. Supp. 2d 681, 684 (E.D. Pa. 2002).

     LDG Re's first affirmative defense, that it is not liable in its own right for any payments due under the Final Award, is contradicted by the plain language of the Final Award itself.  Although the Final Award states that LDG Re is the manager of the WCAF-1, it also specifies that "LDG Re and the Members are ordered to pay in full" and "LDG Re and the Members are to promptly remit payment to the Companies."  In addition, the first page of the Contracts between LDG Re and the Petitioner defines LDG Re as the "Subscribing Reinsurer" and provides that the "Subscribing Reinsurer agrees to participate in a 100% share of the interests and liabilities of the Resinsurers described in the Agreement."  On the other hand, the Settlement Agreement states that the Reinsurers, defined as the WCAF-1 and each WCAF-1 member company, have agreed to pay the settlement amount.  Regardless of which interpretation controls, if LDG Re is required to make this payment, LDG Re will inevitably seek to collect this sum from Chartwell, now Trenwick, which is the principal reason why Trenwick's Motion to Intervene was granted

     Respondent's second affirmative defense is also flawed.  Petitioner is correct that a petition for confirmation of an arbitration award is a motion, not a pleading.  See IFC Interconsult, AG v. Safeguard Int'l Partners, 438 F.3d 298, 308 (3d Cir. 2006).  Local Rule 7.1

governing motion practice does not require the party filing a motion to include a summons or to specify the time period that the opposing party will have to respond to the motion.

      B.  **Motion to Strike**

Petitioner has also filed a Motion to Strike an affidavit filed by John P. Higgins, counsel for LDG Re in opposition to the Petition. Petitioner alleges that the affidavit filed in support of Respondent's Opposition to the Petition to Confirm Arbitration should be stricken because the attorney filing the affidavit is not admitted as counsel in this action and is not admitted to practice in Pennsylvania. Petitioner also alleges that the affidavit essentially functions as a surreply and makes legal arguments that have no place in an affidavit.

Respondent in turn argues that the attorney is a fact witness and that the affidavit asserts facts in support of its opposition to the Petition regarding Respondent's affirmative defenses.

The Motion to Strike will be denied.

**V.  Conclusion**

The Court held oral argument on all pending motions in this case on December 8, 2006, following which the Court concluded that the policies of the Arbitration Act warranted entry of judgment on the arbitration award. The Court directed counsel to discuss how this ruling should be implemented by means of a written order, which would also provide for further proceedings to determine the offset issue.

Counsel were apparently unable to agree on a form of order, and submitted two separate forms. The Court has largely, but not entirely, adopted the form of order submitted by the Intervenors because it sets forth the history of the dispute in more detail and also provides for the entry of judgment, which is the appropriate relief. Petitioner's form of order would require the

Intervenors to specifically pay the Petitioner the sum of $1,867,527.36 plus interest and leave the offset issue for further development.  The Court believes that requiring the Intervenors to make this payment before the Commonwealth Court has exercised its exclusive jurisdiction as to this issue, as the parties agreed, would be unfair to the Intervenors.  However, the Petitioner may seek a bond to secure the payment because the proceedings before the Commonwealth Court, and any appeal to the Pennsylvania Supreme Court, may be lengthy and the Petitioner should not be at risk for receiving payment if it is finally determined that the Petitioner is entitled to such payment.

       The Court, therefore, enters the following Order.

A:\Koken v. LGD Memo on Petition 12-28-06.wpd